1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10
11
12
13
14
15

RAMONA WHITE,

          Plaintiff,

      v.

VANCOUVER NEUROLOGISTS AND
NEUROPHYSIOLOGISTS, P.S. and DOES
1-10,

          Defendants.

Case No.  C05-5093RJB

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

16
17
18

      This matter comes before the court on Defendant's Motion for Summary Judgment, as amended (Dkt.14, 15). The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

19
20

## I. FACTUAL AND PROCEDURAL BACKGROUND

21
22
23
24

      Ramona White was hired by Vancouver Neurologists ("the Clinic") as a medical assistant in October of 1996. She was married to Wayne White, an African-American, at the time. Ms. White assumed part-time managerial duties over the Clinic's medical assistants, but her primary duties concerned medical assistance.

25
26
27
28

      Karen Harrison, who is of German national origin, became an administrator at the Clinic in June 1998. Ms. Harrison promoted Ms. White to part-time manager of the Clinic's medical assistants. Ms. Harrison was charged with conducting Ms. White's performance evaluations and gave her positive performance reviews from 1998 to 2002. In 2003, Ms. White was told that she

1  was going to lose her office to accommodate serious interpersonal conflicts in other departments.

2  In November of 2003, Ms. White's performance review was unfavorable.

3        On March 18, 2004, Ms. White filed an internal complaint against the Clinic and Ms.

4  Harrison, contending that she had been discriminated against on the basis of her national origin

5  and her interracial marriage. Specifically, Ms. White alleged that she should have been salaried,

6  that she should not have been removed from her office, that other managers were making

7  decisions affecting her department, that her Christmas bonus was reduced every year, and that the

8  physicians treated her poorly. In her complaint, she requested that the Clinic pay for her to attend

9  Human Resource classes, pay her a salary of not less than $3,200 per month, give her an office,

10  and employ her in the Human Resources department.

11        The Clinic required that the dispute be taken to Ms. Harrison for mediation. Ms. Harrison

12  brought the dispute to the attention of the doctors. The Clinic contracted Miller Nash, a law firm,

13  to investigate Ms. White's complaint. The Miller Nash investigators issued a report on April 19,

14  2004, contending that neither the clinic nor Ms. Harrison had discriminated against White on the

15  basis of her national origin or interracial marriage.

16        Ms. White filed a charge with the EEOC. On April 19, 2004, the EEOC issued a no-cause

17  finding.

18
19        Ms. White resigned on April 23, 2004. Ms. White was replaced by a full time medical

20  assistant who is also in an interracial marriage, and another Clinic manager assumed her

21  managerial responsibilities.

22        On February 3, 2005, Ms. White filed this action against Vancouver Neurologists and

23  Neurophysiologists. Ms. White is of German descent, speaks with an accent, and is in an

24  interracial marriage. She contends that the defendants harassed, discriminated against, and

25  constructively discharged her on the basis of her national origin and her interracial marriage. She

26  further contends that the defendants maintained a hostile work environment and that she was

27  retaliated against for complaining about the environment and about being harassed. Finally, she

28  contends that her pay was not comparable to that of similarly situated employees. Ms. White sues

1  under Title VII of the Civil Rights Act of 1991 and the Civil Rights Act of 1866 and under RCW

2  49.60.

3      Vancouver Neurologists ("the Clinic") moves for summary judgment, contending that

4  there are no issues of material fact precluding summary judgment.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

8      Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

9  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

10  to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.

11  56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails

12  to make a sufficient showing on an essential element of a claim in the case on which the

13  nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

14  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

15  rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith*

16  *Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant

17  probative evidence, not simply "some metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).

18  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting

19  the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

20  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific*

21  *Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

22      The determination of the existence of a material fact is often a close question.  The court

23  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

24  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

25  *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

26  of the nonmoving party only when the facts specifically attested by that party contradict facts

27  specifically attested by the moving party.  The nonmoving party may not merely state that it will

28  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

1   to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

2   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be

3   "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

4
5   **B. NATIONAL ORIGIN AND RACE DISCRIMINATION**

6       Ms. White brings claims for national origin discrimination under Title VII and RCW

7   49.60. The Clinic contends that Ms. White's race and national origin discrimination claims fail as a

8   matter of law because Ms. White was not subjected to an adverse employment action, she cannot

9   demonstrate that the Clinic's actions were pretext for discrimination, and she was not treated

10  differently from similarly situated employees.

11      In her response, Ms. White contends that the Clinic took away her office, paid her less

12  than other managers, and constructively discharged her; that the Clinic treated non-German

13  managers who were not married to African Americans differently; and that the Clinic treated her

14  differently from other managers.

15      Under Title VII of the Civil Rights Act of 1964, it is unlawful "for an employer– (1) to fail

16  or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual

17  with respect to his compensation, terms, conditions, or privileges of employment, because of such

18  individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). Disparate

19  treatment claims brought under either Title VII or RCW 49.60 are analyzed under the

20  *McDonnell-Douglas* burden shifting framework. *Coghlan v. American Seafoods Co. LLC.*, 413

21  F.3d 1090, 1093-94 (9th Cir. 2005); *Hill v. BCTI Income Fund-I,* 144 Wn.2d 172, 181 (2001).

22  The plaintiff must first present a *prima facie* case of discrimination on the basis of national origin

23  or race. *Id.* at 1094. The evidence required at this stage is minimal and need not meet the

24  preponderance of the evidence standard. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d

25  654, 659 (9th Cir. 2002). If she succeeds in establishing a *prima facie* case, there is a rebuttable

26  presumption that the defendant committed unlawful discrimination. *Dominguez-Curry v. Nevada

27  Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). If the defendant offers a legitimate reason

28  for adverse employment action, the presumption is defeated and the burden shifts back to the

ORDER - 4

plaintiff to create a genuine issue of material fact as to whether the proffered reason is pretext for discrimination. *Coghlan*, 413 F.3d at 1094.

### 1. *Prima Facie* Case

In order to present a prima facie case of disparate treatment, the plaintiff must prove (1) that she is part of a protected class, (2) that she was qualified for her job, (3) that she was subjected to an adverse employment action, and (4) that similarly situated employees outside of her protected class were treated more favorably or other circumstances surrounding the adverse employment action giving rise to an inference of discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). The Clinic contends that Ms. White cannot meet the third and fourth prongs of her *prima facie* case because she was not subjected to an adverse employment action and was not treated less favorably than similarly situated employees outside of her protected class.

### a. Adverse Employment Action

The Clinic contends that Ms. White cannot meet the third prong of her *prima facie* case because she did not suffer an adverse employment action. Dkt. 15 at 9. Ms. White contends that she suffered three adverse employment actions.

First, Ms. White contends that she was expected to do the same job as other managers, who all had use of an office, but that she was denied use of an office. Dkt. 22 at 11. The Clinic contends that Ms. White was primarily a medical assistant and that her managerial role was part time. Dkt. 15 at 12. The Clinic contends that she therefore did not require the use of an office. Whether an employment action is adverse is analyzed from both an objective and a subjective standpoint. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003). From an objective standpoint, requiring a medial assistant at the Clinic to perform her duties without the use of an office would presumably be reasonable, but expecting a manager to fulfill her supervisory role without an office would be unreasonable if all other managers had offices. Determining whether removing Ms. White from her office constitutes an adverse employment action therefore hinges upon the degree to which Ms. White was a manger at the Clinic. Ms.

White contends that 80% of her time was spent on her managerial duties. Dkt. 13-6 at 17. The Clinic contends that Ms. White was primarily a medical assistant. *See* Dkt. 13-7 at 16-17. Viewing the facts in the light most favorable to the plaintiff, Ms. White was primarily a manager, and losing her office space arguably constitutes an adverse employment action.  From a subjective standpoint, for purposes of this motion for summary judgment, the court accepts Ms. White's view that her duties were primarily managerial, and therefore she was a manager.

Second, Ms. White contends that she was paid less than and differently from other managers. She contends that she was paid $17 per hour, while other managers were paid, respectively, $19, per hour; $48,000 per year; and $64,000 per year. Dkt. 22-6 at 6-7. She also contends that she, unlike other managers, was required to submit a timecard and that being treated "like the lower level employees" made her feel "degraded." Dkt. 22 at 12-13. The Clinic's motion contends that Ms. White's comparison of herself to other managers is inapposite because those managers had different responsibilities and qualifications. Dkt. 15 at 12. The Clinic also opines that Ms. White probably earned more as a non-exempt employee than as a salaried employee because she frequently worked overtime. Dkt. 15 at 11. The appropriateness of Ms. White's pay is not at issue in this stage of the *McDonnell-Douglas* burden-shifting analysis. The evidence that Ms. White earned less than other managers raises a material issue of fact as to whether the pay differential constitutes an adverse employment action.

Finally, Ms. White contends that she was constructively discharged. The Clinic contends that Ms. White's resignation was voluntary and that a reasonable person would not have felt forced to resign from the Clinic. The response does not address this point and, for reasons explained in more detail below, does not demonstrate that a reasonable employee would find the working environment at the Clinic "extraordinary and egregious" so as to constitute a constructive discharge. *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). The court should therefore hold, as a matter of law, that Ms. White was not constructively discharged.

**b. Favorable Treatment of Similarly Situated Employees**

The Clinic contends that Ms. White cannot meet the fourth prong of her *prima facie* case because there is no evidence that similarly situated employees were treated more favorably. Dkt. 14 at 12. Furthermore, the Clinic essentially contends that it is impossible for Ms. White to bring a cause of action for national origin discrimination because there are no employees at the Clinic who are similarly situated to Ms. White. *Id.* The response does not explicitly address this argument and merely contends, "Ms. White was clearly similarly situated. [sic] to other managers except that she had additional responsibilities." Dkt. 22 at 13.

Employees are considered similarly situated if their jobs and conduct are similar. *Vasquez*, 349 F.3d at 641. The supervisory nature of an employee's job and the level of responsibility it entails are distinguishing factors that affect this analysis. *Id.* Merely because Ms. White was the only part time manager employed by the Clinic and that her supervisory responsibilities were not identical to those of full time managers should not operate to foreclose her from alleging disparate treatment. The fact that Ms. White's role was supervisory and entailed more responsibility than being a mere medical assistant, similar to the Clinic's full time managers, is sufficient to meet the plaintiff's low burden of raising an issue of material fact as to whether she was treated differently from similarly situated employees.

**2. Legitimate Reason**

Because the plaintiff has met her low burden of proof in establishing the elements of a *prima facie* case, the burden of production shifts to the Clinic to produce legitimate, nondiscriminatory reasons for any adverse employment actions.

The Clinic contends that Ms. White was removed from her office to accommodate another employee who needed to be moved in response to an interpersonal conflict unrelated to Ms. White. Dkt. 13-7 at 17. Ms. White's office was chosen because she used it only on a part-time basis, because she did not need an office to fulfill her primary duties as a medical assistant, and because there was another office she could use on the Fridays when she typically performed her part-time managerial duties. *Id.* at 17-18.

1   The Clinic contends that other managers were paid more because their responsibilities and

2   qualifications were different. Dkt. 15 at 12. Ms. White performed her managerial duties on

3   Fridays, but the other managers' positions required 40 hours per week or more. Dkt. 13-4 at 13-

4   14. Ms. White supervised and evaluated five employees. *Id.* at 13. The other managers supervised

5   and evaluated six, seventeen, and eighteen employees. *Id.* at 14. These reasons are sufficient to

6   meet the defendant's burden of production to produce legitimate reasons for the adverse

7   employment actions cited by Ms. White and to defeat the presumption of unlawful discrimination.

8   The onus is therefore on the plaintiff to create a genuine issue of material fact that the proffered

9   reasons are pretextual.

10                  **3. Pretext**

11   At this stage, the plaintiff's burden is to produce evidence demonstrating that the adverse

12   employment actions were motivated in whole or in part by discriminatory intent. *Dominguez-*

13   *Curry*, 424 F.3d at 1037. The plaintiff may meet this burden by demonstrating that the proffered

14   explanation is inconsistent or otherwise unbelievable. *Id.* The plaintiff may offer direct or

15   circumstantial evidence of discriminatory animus. *Id.* 1038. Direct evidence is evidence that

16   proves discriminatory animus without the need for inference or presumption. *Id.* Such evidence

17   typically consists of overtly discriminatory comments or actions by the employer and creates a

18   triable issue for the finder of fact, even if the evidence is insubstantial. *Id.* Circumstantial evidence,

19   which relies upon inferences and presumption, must be both specific and substantial in order to

20   withstand summary judgment. *See id.* In the instant case, Ms. White is required to come forth

21   with direct evidence of discriminatory animus or circumstantial evidence rebutting the Clinic's

22   contentions that it needed Ms. White's office to accommodate an interpersonal conflict in another

23   office and that Ms. White's responsibilities differed from other managers' responsibilities.

24   As direct evidence of discriminatory animus, Ms. White contends that she overheard Ms.

25   Harrison use the phrase "damn Nazis" while talking on the phone. Dkt. 13-6 at 11. Ms. White

26   inferred from this comment that Ms. Harrison thinks all Germans are Nazis and was probably

27   talking about Ms. White. *Id.* Ms. White has no knowledge about the context of the comment or to

28

1  whom Ms. Harrison was speaking when the comment was made. Even viewing this evidence in
2  the light most favorable to Ms. White, it fails to create a genuine issue of material fact as to
3  whether the reasons offered by the defendant are pretextual. There is nothing to suggest that Ms
4  Harrison was speaking about Germans generally, much less about Ms. White in particular, when
5  she made this comment.

6       Ms. White does not offer any circumstantial evidence to rebut the Clinic's reasons for
7  removing her from her office and paying her less than other managers. She merely asserts that her
8  job performance was satisfactory and that she was denied an office and the same salary as full
9  time managers, essentially asking the court to infer discrimination. In light of the legitimate,
10  nondiscriminatory reasons proffered by the defendant, such an inference is unsubstantiated and
11  cannot withstand the motion for summary judgment. The court should therefore grant the motion
12  and dismiss the plaintiff's disparate treatment claims.

13  **C. HOSTILE WORK ENVIRONMENT**
14
15       The Clinic moves for summary judgment on the claim that Ms. White was subjected to a
16  hostile work environment. To prevail on a hostile workplace claim premised on either race or sex,
17  a plaintiff must show (1) that he was subjected to verbal or physical conduct of a racial nature; (2)
18  that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to
19  alter the conditions of the plaintiff's employment and create an abusive work environment.
20  *Vasquez*, 349 F.3d at 642. The Clinic contends that Ms. White cannot demonstrate that she was
21  harassed on the basis of her interracial marriage or national origin, and she cannot demonstrate
22  that the Clinic's conduct was severe or pervasive.

23            **1. Discriminatory Conduct**

24       Ms. White's response does not explicitly address her hostile work environment claim. She
25  does identify allegedly discriminatory verbal and physical conduct in the form of offensive
26  gestures, being looked down upon, being talked down to, and being forced to sign time cards in
27  the presence of other employees. Dkt. 22 at 11. These allegations are primarily conclusory. Ms.
28  White contends that Ms. Harrison "put[] up a hand as if to say, [']['Y]ou are not entitled to be

heard.[']" Dkt. 22 at 11. She surmises that this gesture was based upon her national origin and her interracial marriage. *Id.* Ms. White's allegations regarding the way in which Ms. Harrison treated her are vague. She contends that Ms. Harrison was condescending, short, cold, and abrupt but offers no concrete examples beyond the hand gesture. Dkt. 13-6 at 7-8. Finally, she contends that she was the only manager who was paid hourly, but she admits that she was also a medical assistant at the time and that she was working part time. Dkt. 13-6 at 17-18. Viewed in the light most favorable to the plaintiff, these conclusory allegations fail to create an issue of fact as to whether Ms. White suffered from national origin and race discrimination.

### 2. Severity and Pervasiveness

Not all workplace disputes fall within the purview of Title VII. The severe and pervasive prong ensures that only truly harassing behavior is deemed unlawful. To determine whether conduct is severe and pervasive, the court looks at the context of the alleged harassment to determine its frequency and severity, whether it is physically threatening or humiliating, and the extent to which it unreasonably interferes with the employee's work performance. *Vasquez*, 349 F.3d at 642. The working atmosphere must be both subjectively and objectively abusive. *Id.* Merely an offensive utterance is insufficient. *Id.*

Viewed together, the evidence brought forth by the plaintiff (the hand gesture, the arguably discourteous way in which Ms. Harrison spoke to Ms. White, and the fact that Ms. White was paid hourly) does not demonstrate that the work environment at the Clinic was objectively or subjectively abusive. *See id.* (No hostile work environment where supervisor used racial epithets on two occasions and yelled at the plaintiff twice in front of other people). Furthermore, the evidence suggests that Mr. Harrison's conduct was, at most, offensive. The court should therefore grant the motion and dismiss the hostile work environment claim.

### D. RETALIATION

The Clinic contends that it is entitled to summary judgment on Ms. White's retaliation claim because she did not suffer an adverse employment action because she cannot establish a causal connection between her protected activity and an adverse employment action. The portion

1   of the response devoted to the plaintiff's retaliation claim does not address these arguments and

2   does not identify an adverse employment action occurring after she complained. *See* Dkt. 22 at

3   15-16. Instead, it is devoted to describing the way in which Ms. White's formal complaint came

4   about and to arguing that the Clinic's response to the complaint was insufficient.

5       Defendants have raised an issue regarding Ms. White's retaliation claim.  The burden

6   therefore shifts to plaintiff to make a sufficient showing on all essential elements of her claim, on

7   which they have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. at 323-325 (burden

8   of moving party in summary judgment motion may be met by pointing out to the district court

9   that there is an absence of evidence to support the nonmoving party's case; once the moving party

10  has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and

11  identify facts which show a genuine issue for trial).  Ms. White has not satisfied her burden to

12  come forth with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Pro.

13  56(e). The court should therefore grant the motion with respect to the plaintiff's retaliation claim.

14

15  **E. WAGE CLAIM**

16      Finally, the Clinic contends that it is entitled to summary judgment on the plaintiff's wage

17  claim because it is part and parcel of her discrimination claim and not premised upon unpaid

18  wages or overtime violations. Dkt. 14 at 23. The plaintiff's response does not address this

19  argument; she has therefore not met her burden to show a genuine issue of material fact for trial.

20  The court should grant the motion for summary judgment and dismiss the plaintiff's wage claim.

21  **F. CLAIM UNDER 42 U.S.C. § 1981**

22      Mr. White's claim under 42 U.S.C. §1981 is based upon her claim of "constructive

23  termination and denial of the same conditions of employment and terms as white non-German

24  employees not married to African-Americans."  Dkt. 1, at 5.  In a § 1981 action, plaintiffs must

25  show intentional discrimination on account of race. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th

26  Cir. 1989). In order to establish a *prima facie* case under § 1981, plaintiffs must prove: (1) that

27  they are members of a racial minority; (2) that the defendants had an intent to discriminate on the

28  basis of race; and (3) that the discrimination concerned one or more activities enumerated in the

1 statute. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413-14 (7th Cir. 1996); *Green v. State Bar of*

2 *Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994). To state a claim under Section 1981, there must be

3 evidence of racial animus on the part of the defendants. *Evans v. McKay*, 869 F.2d 1341, 1345

4 (9th Cir. 1989). As discussed above, defendants have shown that there is no material issue of fact

5 supporting Ms. White's claim that defendants had an intent to discriminate against her on the basis

6 of race.  Further, Ms. White has not shown, nor has she alleged, that the discrimination concerned

7 one or more activities enumerated in the statute.  he plaintiff has offered no facts demonstrating

8 that her rights under Section 1981 have been violated.  The court should therefore grant

9 defendants' motion for summary judgment as to this claim, and the claim should be dismissed.

10 **G. MOTION TO STRIKE**

11      In their reply brief, the defendants move to strike several affidavits submitted in support of

12 the plaintiff's response, on the basis that the affidavits contain hearsay which cannot be used to

13 create disputes of fact. Dkt. 23, at 4. The court has reviewed the documents at issue, and has

14 relied on evidence in those documents that complies with the requirements of Fed.R.Civ.P. 56(e).

15 Defendants' objections are noted as appropriate.  The court should decline, however, to strike the

16 documents.

17 **III. ORDER**

18      Therefore, it is hereby

19

20      **ORDERED** that Defendant's Motion for Summary Judgment, as amended (Dkt.14, 15) is

21 **GRANTED**. Defendants' motion to strike Ms. White's affidavits (Dkt. 23) is **DENIED**. This

22 case is **DISMISSED** with prejudice.

23

24

25

26

27

28

The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 21st day of December, 2005.

Robert J. Bryan
United States District Judge

ORDER - 13